UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

**GCA SERVICES GROUP, INC.,**

      **Plaintiff,**

v.                                                      No. 2:16-cv-02251-SHL-cgc
                                                                Jury Trial Demanded

**PARCOU, LLC,**
**SOUTHERN MAINTENANCE SYSTEMS, LLC,**
**JERRY PARKER, DAVID COULTER,**
**MARK COULTER, ENZO DICKENS,**
**JONATHAN LEWIS, LAKENDRELL PARKER,**
**COLLINS ONYANDO,**
**CHRISTOPHER PEARSALL, and**
**JERRY TIGNER, SR.,**

      **Defendants.**

---

### DEFENDANT PARCOU, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

**COMES NOW** Defendant, ParCou, LLC ("ParCou"), and submits this memorandum of law in support of its Motion for Summary Judgment.

### I.  Introduction.

In this lawsuit, Plaintiff GCA Services Group, Inc. ("Plaintiff") has lodged a number of claims and allegations against eleven defendants. The gravamen of Plaintiff's Complaint is that the defendants improperly competed against Plaintiff to provide janitorial services to schools in Tennessee. While there are nineteen (19) counts in Plaintiff's Complaint, only one of those counts is directed at ParCou. In Count 14 of the Complaint, Plaintiff alleges that ParCou intentionally induced Defendant Jonathan Lewis ("Mr. Lewis") to breach a noncompetition

agreement that he allegedly had with Plaintiff in violation of Tennessee statutory law and Tennessee common law.  (D.E. 1 at ¶¶ 98-103).

There are a few glaring problems with Plaintiff's intentional inducement of breach of contract claims.  First, ParCou had no knowledge of Mr. Lewis's purported noncompetition agreement with Plaintiff.  Defendants Jerry Parker ("Parker") and Mark Coulter ("Coulter") are the sole members and officers of ParCou and they stated unequivocally that they were not aware that Mr. Lewis had entered into a noncompetition agreement with Plaintiff.  Their testimony is bolstered by Kristopher Thomas, Plaintiff's vice president of operations, who testified that while he has a noncompetition agreement with Plaintiff, he is unaware of any others that have noncompetition agreements with Plaintiff.  This is particularly significant because Mr. Thomas hired and/or supervised Parker and Coulter.  Parker entered into a nondisclosure, noncompetition and noninterference agreement with Plaintiff, and Coulter entered into a nondisclosure and noninterference agreement with Plaintiff.  Those agreements, and all other such agreements, are executed through working with Plaintiff's human resources department.  If the boss does not know whether or not his subordinates have employment agreements, how would anyone else?

Second, even if ParCou did know about Mr. Lewis's noncompetition agreement with Plaintiff, which it did not, there is no evidence ParCou intentionally induced Mr. Lewis to breach his noncompetition agreement.  At no point did ParCou take any action to encourage Mr. Lewis to breach his agreement with Plaintiff.

Because ParCou did not know about Mr. Lewis's noncompetition agreement with Plaintiff and because ParCou took no action to induce Mr. Lewis to breach his agreement with Plaintiff, ParCou is entitled to summary judgment on Plaintiff's intentional inducement of breach of contract claims.

## II.     Factual Background.

Plaintiff contends in its Complaint that it is a "national provider of quality facility services, including janitorial and custodial services, contamination control for cleanroom manufacturing, facilities maintenance, grounds management, and other staffing services." (Statement of Undisputed Material Facts ("SOF") ¶ 19). The Complaint further alleges that Parker and Coulter "worked within [Plaintiff's] Education Division, providing management-level oversight of certain customer accounts and janitorial services offered to public schools in Tennessee." (SOF ¶ 20).

In order to work for Plaintiff, Parker was required to execute a non-disclosure, non-compete and non-interference agreement drafted by Plaintiff. (SOF ¶ 14). Although Parker only worked in Plaintiff's Education Division "providing management-level oversight" of janitorial services provided by Plaintiff to public schools in Tennessee, the non-disclosure, non-compete and non-interference agreement seemingly precludes Parker from directly or indirectly engaging in "the provision or management of facilities management services including, but not limited to, janitorial, housekeeping, plant and operations maintenance, temporary staffing or security services" anywhere in the world for a period of two years after the conclusion of his employment with Plaintiff. (SOF ¶¶ 20, 24). Thus, although Parker never provided security services for Plaintiff, the agreement prohibits Parker from engaging in such services in the United States or abroad for two years after leaving Plaintiff.

Like Parker, in order for Coulter to work for Plaintiff, he was required to execute a non-interference and non-disclosure agreement drafted by Plaintiff. (SOF ¶ 4). While Coulter only worked in Plaintiff's Education Division, Coulter's agreement with Plaintiff also purports to prohibit Coulter from engaging in janitorial, housekeeping, plant and operations management,

3

temporary staffing or security services anywhere in the entire world for a period of two years after the conclusion of his employment with Plaintiff.  (SOF ¶¶ 20, 24).

Plaintiff filed its Complaint on April 15, 2016.  (D.E. 1).  In its Complaint, Plaintiff brought one (1) claim against ParCou.  Plaintiff alleged that ParCou intentionally induced Mr. Lewis to breach his contract with Plaintiff.  (Id. at ¶¶ 98-103).

Coulter worked for Plaintiff from 2008 until he resigned in April 2015.  (SOF ¶¶ 3, 23).  Parker worked for Plaintiff from 2010 until he resigned in April 2015.  (SOF ¶¶ 13, 23).  While working for Plaintiff, Parker and Coulter managed employees who performed janitorial and custodial services in various public school districts.  (SOF ¶ 20).  Parker was hired by Kristopher Thomas, who is currently Plaintiff's vice president of operations.  (SOF ¶ 13).  Mr. Thomas also supervised Parker near the beginning of Parker's employment with Plaintiff.  (Id.).  Mr. Thomas did not hire Coulter, but he did supervise Coulter while Coulter worked for Plaintiff.  (SOF ¶ 8).

Mr. Thomas has been employed by Plaintiff for approximately twelve years.  (SOF ¶ 50).  As vice president of operations, Mr. Thomas oversees Plaintiff's education division operations in middle and western Tennessee as well as Kentucky, which amounts to supervising Plaintiff's services performed for 36 school districts.  (SOF ¶ 50).  He is responsible for supervising a number of regional managers that service those school districts.  Mr. Thomas works for Plaintiff pursuant to an employment agreement.  (SOF ¶ 35).  That employment agreement contains a noncompetition provision.  (SOF ¶ 35).  Although Mr. Thomas has hired employees, including Parker, and has supervised a number of employees, including Parker and Coulter, he does not know if other employees for Plaintiff have noncompetition agreements.  (SOF ¶ 35).

Like Mr. Thomas, Parker did not know whether or not other employees of Plaintiff had employment agreements or noncompetition agreements. (SOF ¶ 34).  More specifically, Parker

4

did not know that Mr. Lewis had an employment agreement with Plaintiff.  (SOF ¶ 34).  Parker received an employment package which contained his employment agreement when he was hired by Plaintiff but he has never seen another employee's employment package or employment agreement.  (SOF ¶ 34).  Coulter was also unaware that Mr. Lewis had an employment agreement with Plaintiff that contained noncompetition provisions.  (SOF ¶ 34).

In August 2014, Parker and Coulter formed ParCou by filing articles of incorporation with the Tennessee Secretary of State.  (SOF ¶ 21).  ParCou did not begin performing any services or hiring employees until June/July 2015.  (SOF ¶ 25).  From the time that ParCou was formed until this suit was filed against ParCou, ParCou was unaware that Mr. Lewis had a noncompetition agreement with Plaintiff.  Moreover, ParCou did not encourage or otherwise induce Mr. Lewis to breach his contract with Plaintiff.

### III.   ParCou is Entitled to Summary Judgment.

**A.    Summary Judgment Standard.**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  To meet this burden, the moving party may rely on any of the evidentiary sources listed in Rule 56(c) or on the failure of the nonmoving party to produce more than a mere scintilla of evidence that would create a genuine dispute for the jury.  *Leary v. Daeschner*, 349 F.3d 888, 896-97 (6th Cir. 2003).  There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party; if the evidence is merely colorable or is not significantly probative, summary judgment may be granted.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The central issue is whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251-52.

It is not sufficient simply to show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The facts must provide more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson*, 477 U.S. at 252. Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**B.      Choice of Law.**

Because jurisdiction for Plaintiff's claims against ParCou is premised on diversity of citizenship, Tennessee choice of law rules apply to determine the applicable law. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). For tort claims, Tennessee follows that "most significant relationship" test, which provides that "the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation." *See Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992). Any alleged injuries to Plaintiff occurred in Tennessee and, therefore, Tennessee law applies to this case. No other state has a more significant relationship to this litigation.

**C.      Plaintiff's Intentional Inducement of Breach of Contract Claim Fails.**

ParCou is entitled to summary judgment because Plaintiff cannot prove that ParCou intentionally induced Jonathan Lewis to breach a noncompetition agreement he had with Plaintiff. Specifically, ParCou was not aware that Mr. Lewis had a noncompetition agreement

6

with Plaintiff. (SOF ¶ 34). Furthermore, even if ParCou was aware of Mr. Lewis's noncompetition agreement with Plaintiff, which it was not, there is absolutely no evidence that ParCou induced Mr. Lewis to breach his agreement with Plaintiff.

Tennessee law prohibits the inducement of a breach of contract. Tenn. Code Ann. § 47-50-109 provides as follows:

> It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract. The party injured by such breach may bring suit for the breach and for such damages.

"The statute is declaratory of the common law except as to the amount of damages that may be recovered against a wrongdoer." *New Life Corp. of America v. Thomas Nelson, Inc.*, 932 S.W.2d 921, 926 (Tenn. Ct. App. 1996). To recover for inducement of breach of contract, a plaintiff must establish each of the following seven elements: (1) the existence of a legal contract; (2) the defendant's knowledge of the existence of the contract; (3) the defendant's intention to induce or procure a breach of the contract; (4) the defendant's malicious conduct; (5) a breach of the contract; (6) the act complained of was the proximate cause of the breach of the contract; and (7) damages resulting from the breach of the contract. *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 822 (Tenn. 1994); *Wooley v. Madison County, Tennessee*, 209 F. Supp. 2d 836, 849 (W.D. Tenn. 2002).

Assuming that there was a noncompete agreement entered into by Mr. Lewis and Plaintiff, there is no evidence that ParCou was aware of Mr. Lewis's noncompete agreement with Plaintiff. Defendants Jerry Parker and Mark Coulter are the sole members and officers of ParCou. In its Complaint, Plaintiff alleged that Mr. Parker and Mr. Coulter, as principals of

7

ParCou, knew of Mr. Lewis's noncompete agreement with Plaintiff.  (D.E. 1 at ¶¶ 98-103).  Mr. Parker and Mr. Coulter stated unequivocally at that they were not aware that Mr. Lewis had a noncompete agreement with Plaintiff.  (SOF ¶ 34).

Moreover, Plaintiff's vice president of operations, Kristopher Thomas, testified that while he is subject to a noncompetition agreement with Plaintiff, he is unaware if Plaintiff's other employees are subject to noncompetition agreements.  (SOF ¶ 35).  This is significant because Mr. Thomas was involved in hiring Mr. Parker and Mr. Coulter to work as managers for Plaintiff.  (SOF ¶¶ 3, 13).  Thus, if Plaintiff's vice president of operations is unaware if Plaintiff's employees, including his subordinates, are subject to noncompetition agreements, it is unlikely that lower level managers would be aware of their coworkers' agreements with Plaintiff.

At Plaintiff's Rule 30(b)(6) deposition, John Donovan testified on Plaintiff's behalf that Mr. Parker and Mr. Coulter would have known about Mr. Lewis's noncompetition agreement because they hired and fired management while they were employed by Plaintiff.  (SOF ¶ 36).  Mr. Donovan, however, did not know if Mr. Parker or Mr. Coulter hired Mr. Lewis.  (SOF ¶ 36).  More importantly, even if Mr. Parker or Mr. Coulter were involved in the hiring process for Mr. Lewis, there is no evidence that Mr. Parker or Mr. Coulter presented Mr. Lewis with a noncompetition agreement to sign or were otherwise aware if Mr. Lewis had a noncompetition agreement.  Plaintiff's human resources department is responsible for having managers and other of Plaintiff's employees execute their employment/noncompetition agreements.  (SOF ¶ 49.

ParCou's lack of knowledge of Mr. Lewis's noncompetition agreement with Plaintiff is fatal to Plaintiff's intentional inducement of breach of contract claims.  Therefore, ParCou is entitled to judgment as a matter of law.

Not only has Plaintiff failed to establish that ParCou was aware that Mr. Lewis had a noncompetition agreement with Plaintiff, Plaintiff also cannot show that ParCou induced, or even attempted to induce, Mr. Lewis to breach his contract. There is no evidence that ParCou recruited Mr. Lewis to work for ParCou. Importantly, Mr. Lewis worked for ABM Janitorial Services upon concluding his employment with Plaintiff, not ParCou. (SOF ¶ 37).

Furthermore, Plaintiff cannot show that it was damaged by any alleged inducement of breach of contract by ParCou. Plaintiff testified under oath that it has not lost any contracts with any school districts as result of actions taken by Coulter and Parker. (SOF ¶ 33). Moreover, when requested to identify each and every financial or material loss or damage, Plaintiff identified no damages sustained for its intentional inducement of breach of contract claims. (SOF ¶ 48).

## IV.  Conclusion.

For the reasons stated herein, this Court should grant ParCou's Motion for Summary Judgment.

Respectfully submitted,

**GLANKLER BROWN, PLLC**

By: /s/ Andre B. Mathis
    Andre B. Mathis (#26458)

6000 Poplar Avenue, Suite 400
Memphis, Tennessee  38119
Telephone:  (901) 525-1322
Facsimile:  (901) 525-2389
E-Mail:  amathis@glankler.com

*Attorneys for ParCou, LLC, Jerry Parker and Mark Coulter*

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that a copy of the foregoing has been served upon all counsel of record, by electronic means via the Court's electronic filing system, on this the 28th day of April, 2017.

                                                                  /s/ Andre B. Mathis

4841-6056-7365, v. 1